Jubran C. JUBRAN, etc., et al., Plaintiffs,

v.

MUSIKAHN CORPORATION, et al., Defendants.

No. CV 86–0616.

United States District Court, E.D. New York.

Nov. 9, 1987.

Philip J. Luongo, Garden City, N.Y., for plaintiff Marrone.

Kase & Druker, Garden City, N.Y., for plaintiffs.

Stephen C. Wilk, New York City, for defendant Individual Securities Ltd.

Jack B. Solerwitz, Mineola, N.Y., for defendant Catapano.

Friedman & Shaftan, P.C., New York City by Sheila A. Chervin, for defendant Blinder, Robinson & Co.

Heller, Horowitz & Feit, P.C., New York City, for defendant Binder.

**110**

Kensington, James & Ressler, New York City by Raymond C. James, for defendant Dominick & Dominick, Inc.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiffs commenced this lawsuit on or about February 28, 1986 alleging that the actions of defendants in connection with a public offering of shares of Musikahn Corporation ("Musikahn") stock violated various provisions of the federal securities laws as well as certain common-law duties. Named as defendants in the original complaint were Musikahn, its president, Gerard Binder ("Binder"), Dominick & Dominick, Inc. ("D & D"), a broker-dealer, Individual Securities, Inc. ("Individual Securities"), a broker-dealer, Ralph Catapano ("Catapano"), a securities salesperson employed by Individual Securities and Blinder, Robinson & Co. ("BR"), a broker-dealer.

In a Memorandum and Order dated August 12, 1986 the Court granted defendants Binder and BR's motions to dismiss the complaint for failure to allege facts sufficient to support a claim against these defendants. *Jubran v. Musikahn Corp.*, No. CV 86–0616, slip op. at 2, 3 (E.D.N.Y. August 12, 1986) (hereinafter *"Jubran I"*). Leave to amend the complaint was granted, however, and on or about August 25, 1986 plaintiffs served an amended complaint (the "First Amended Complaint").

Shortly thereafter, defendants Binder and BR renewed their motions to dismiss and defendants Catapano and D & D also moved to dismiss the First Amended Complaint. In a Memorandum and Order dated December 19, 1986 the Court granted each motion to dismiss on the ground that plaintiffs failed to comply with the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Since the December 19, 1986 Memorandum and Order marked the first specific reference by the Court to Rule 9(b) and plaintiffs previously attempted to rectify the shortcomings of their original complaint, the Court granted plaintiffs leave to file a second amended complaint. *Jubran v. Musikahn Corp.*,

673 F.Supp. 108, 114 (E.D.N.Y.1986) (hereinafter *"Jubran II"*).

Leave to file a second amended complaint was granted, however, only as to defendants Binder, BR and Catapano. The Court declined to rule similarly with respect to defendant D & D because "given the amended complaint's totally insufficient allegations against D & D and plaintiffs' own admission that they have failed to state a claim in their amended complaint against [D & D]," the only proper course was to dismiss the claims against D & D. *Jubran II* at 7–8. Accordingly, the complaint against D & D was dismissed and leave to replead was denied. D & D's motion to dismiss was granted without prejudice, however, to plaintiffs' right to commence another action against D & D if plaintiffs "obtain information of wrongful acts by D & D sufficient to give rise to such a suit." *Id.* at 9.

On or about January 8, 1987 plaintiffs, in an attempt to correct their previous pleading errors, served a second amended complaint (the "Second Amended Complaint"). Currently before the Court are the motions of four defendants. Specifically, defendants Binder, BR, Catapano and Individual Securities have each moved to dismiss the Second Amended Complaint for failure to comply with Rule 9(b) and, stating additional grounds in support of a motion pursuant to Rule 12(b)(6), for failure to state a claim upon which relief can be granted. Each motion is addressed below in turn.

### I. *Binder's Motion to Dismiss The Complaint and the First Amended Complaint*

Plaintiffs' Complaint and First Amended Complaint were both dismissed as against Binder for failure to comply with the pleading requirements of Rule 9(b). The initial complaint was clearly insufficient in that it failed to assert that Binder made any specific false or fraudulent misrepresentations. *See Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir.1986). Instead, the complaint merely asserted that Catapano and employees of BR falsely represented that Binder supplied certain information and that "each

defendant knew that Binder had in fact not supplied any 'true information.'" *Jubran I* at 2. The First Amended Complaint attempted to correct this pleading deficiency by asserting that Binder disseminated false statements to Catapano and one Thomas Tribet, a BR salesman, which were, in turn, disseminated to prospective purchasers of Musikahn shares. The First Amended Complaint further stated the general subject matter of Binder's allegedly misleading statements, *see* First Amended Complaint ¶ 28(a)–(e) and alleged, upon information and belief, that the aforesaid false information was supplied "by Binder for the purpose of inducing [prospective purchasers] to purchase shares of Musikahn stock." First Amended Complaint ¶ 29.

Finding that these allegations failed to comply with Rule 9(b), the Court granted Binder's motion to dismiss the First Amended Complaint. Specifically, the Court held that plaintiffs failed to set forth important matters such as the time, place, and content of the allegedly false representations, *Jubran II* at 4, citing *Luce v. Edelstein*, 802 F.2d at 54. In addition, the Court rejected plaintiffs' pleading against Binder to the extent that it relied on allegations based on "information and belief" but failed to set forth a statement of facts upon which the asserted "information and belief" was founded. *Jubran II* at 4–5.

### The Second Amended Complaint

Plaintiffs' Second Amended Complaint attempts to cure the previous pleading defects by elaborating further on the prior complaints. Specifically, the Second Amended Complaint sets forth the particular false statements allegedly made by Catapano and Tribet to certain plaintiffs. Second Amended Complaint ¶¶ 27–30. These specific statements are now, unlike plaintiffs' previous pleadings, attributed specifically to either Catapano or Tribet. Included among the now enumerated statements are the allegedly false assertions that "Musikahn stock was guaranteed to open at $1.25," that a specific company intended to take over or be taken over by Musikahn, that delays in the offering were unrelated to any actions by the SEC and

that Musikahn was financially healthy. Second Amended Complaint ¶¶ 28–30. The Second Amended Complaint goes on to allege that, based upon these and other statements, plaintiffs made certain enumerated purchases of Musikahn shares. *See* Second Amended Complaint ¶ 33. Thus, plaintiffs have narrowed their complaint by stating the specific allegedly false statements upon which they relied when purchasing shares of Musikahn stock.

Although plaintiffs continue to allege that Binder was the source of the allegedly false statements, they have failed to allege the exact words that Binder spoke and have again pled, upon "information and belief," the allegation that Binder was the source of the false statements. Plaintiffs have now supplemented this "information and belief" pleading, however, by stating the facts upon which the "information and belief" is grounded. Specifically, plaintiffs attribute the belief that Binder is the source of the allegedly false information to several statements made by Catapano and Tribet to certain plaintiffs. These statements either intimate or state directly that the information communicated by Catapano and Tribet came directly from Binder. *See* Second Amended Complaint ¶ 36.

Although plaintiffs have only been able to narrow the time frame of Binder's allegedly false assertions to Catapano and Tribet to the three and one-half month period between February 15, 1985 and May 31, 1985, plaintiffs have pinpointed the dates upon which Catapano and Tribet allegedly told certain plaintiffs that Binder was the source of their information. Second Amended Complaint ¶ 36. Thus, the Second Amended Complaint alleges that on or about March 8, 1985, at the Individual Securities offices in Melville, New York, Catapano told Campo that Musikahn stock was guaranteed to open at $1.25. Second Amended Complaint ¶ 28(a); *see also id.* at ¶¶ 28(b)–30.

### Binder's 9(b) Motion

■ The crux of Binder's Rule 9(b) argument is that plaintiffs' failure to state the

exact words that Binder spoke and the exact date upon which the words were communicated renders the Second Amended Complaint deficient. According to Binder, plaintiffs' Second Amended Complaint fails, as did the First Amended Complaint, to specify, in any meaningful manner, the content and dates of Binder's alleged misrepresentations. The Court does not agree with Binder's characterization of the Second Amended Complaint and holds, for the reasons set forth below, that the Second Amended Complaint sets forth the facts that constitute Binder's alleged wrongdoing with sufficient particularity to comport with the requirements of Rule 9(b).

As noted above, the Second Amended Complaint states the particular statements upon which plaintiffs allegedly relied. Although Binder's exact words are not stated, the allegedly fraudulent statements are attributed to Binder and the dates upon which they were communicated to certain plaintiffs are set forth in detail. While the date on which Binder allegedly spoke the misrepresentations remains, as in the First Amended Complaint, within a three and one-half month period, plaintiffs have alleged sufficient additional facts to enable Binder to prepare a defense and refute plaintiffs' allegations. For example, it is now clear to Binder that he is charged with making specific false statements to Catapano and Tribet. Binder has also been apprised of the exact subject matter of the statements. Through documentary evidence and testimony Binder may be able to prove that such conversations never in fact took place. Since Binder is now in a position to prepare his defense there can be no doubt that the Second Amended Complaint gives Binder sufficient notice of "precisely what he is charged with. No more is required by Rule 9(b)." *Goldman v. Belden*, 754 F.2d 1059, 1069–71 (2d Cir.1985).

Arguing that the statements of Catapano and Tribet naming Binder as the source of their information amount to nothing more than "broker's puffery," Binder asserts that plaintiffs have not sufficiently stated the facts upon which the "information and belief" that Binder is the source of the false information is grounded. Binder's argument, however, attacks the credibility of the source of plaintiffs' beliefs. Since the Court is bound, in the context of a motion to dismiss to "[draw] all inferences favorable to the pleader," *Yoder v. Orthomolecular Nutrition Institute, Inc.*, 751 F.2d 555, 562 (2d Cir.1985), the Court must accept the veracity of plaintiffs' pleading. Thus, Binder's characterization of the source of plaintiffs' beliefs cannot be accepted as true and the Court finds that plaintiffs' have sufficiently pled the facts showing the source of their beliefs.

Binder's reliance on this Court's decision in *Jubran II* to support the argument that Rule 9(b) requires plaintiffs to state the exact date and place of Binder's allegedly false statements is misplaced. In *Jubran II*, the Court's comments were made in a completely different context. There, plaintiffs failed to place any meaningful timeframe on Binder's statements and did not state the source of their "information and belief" that Binder was the source of the falsehoods. In contrast, the Second Amended Complaint gave exact dates upon which false statements were communicated and states the identity of the parties to the conversations. These additional facts enable Binder to prepare an effective defense. In sum, the Court holds that the Second Amended Complaint pleads facts and sources of belief sufficient to get the plaintiffs past the pleading requirements of Rule 9(b) and denies Binder's motion to dismiss based upon this ground.

### *Binder's Rule 12(b)(6) Motion*
#### 1. *Section 10(b)*

Even assuming that the Second Amended Complaint comports with the pleading requirements of Rule 9(b), Binder argues that plaintiffs have failed to state a claim pursuant to Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) ("Section 10(b)") and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5 ("Rule 10b–5"). Specifically, Binder argues that plaintiffs must allege a *direct* communication between Binder and any of the plaintiffs in order to state a claim under Section 10(b) and Rule 10b–5.

A direct communication between a defendant and any plaintiff is not a prerequisite for the imposition of liability. Thus, a defendant may be liable if he made a fraudulent statement to plaintiff or "knowingly assisted anyone else in doing so." *Freschi v. Grand Coal Venture*, 767 F.2d 1041, 1049 (2d Cir.1985) (reversing finding of liability where there was evidence of *neither* a direct communication nor a knowing assistance of such communication), *vacated on other grounds*, — U.S. —, 106 S.Ct. 3325, 92 L.Ed.2d 731, *modified on other grounds*, 800 F.2d 305 (2d Cir.1986). In such a case, a defendant may be liable, at least, as an aider and abettor. *See* 767 F.2d at 1049–50.

Aider and abettor liability will be imposed if plaintiffs prove that the primary party committed a securities violation, that the aider and abettor knew of the primary party's fraud and rendered "substantial assistance" to the fraud. *Rolf v. Blythe, Eastman Dillon Co., Inc.*, 570 F.2d 38, 47–48 (2d Cir.1978). The Court rejects Binder's argument that plaintiffs' aiding and abetting argument is pled deficiently because plaintiffs fail to allege the necessary elements of such a violation. The facts alleged in the Second Amended Complaint clearly put Binder on notice that he is, at the very least, being charged with rendering "substantial assistance" to a securities violation and the use of any "magic words" to properly allege an aiding and abetting violation is unnecessary.

The Court also rejects Binder's argument that plaintiffs have failed to allege the requisite scienter to assert a claim pursuant to Section 10(b) and Rule 10b–5. The Second Amended Complaint's allegations that defendants knowingly and willfully defrauded plaintiffs satisfies the requirement, recently stated by the Second Circuit, that scienter need only be pled generally. *Goldman v. Belden*, 754 F.2d at 1069–70; *Rooney Pace, Inc. v. Reid*, 605 F.Supp. 158, 162 (S.D.N.Y.1985).

In sum, the Court holds that plaintiffs have alleged facts sufficient to survive a motion to dismiss their 10(b) claim against Binder. The Court in no way wishes to convey the impression that such facts are accepted as true or will be easy to prove at trial. The Court holds only that at this early stage in the proceedings Binder is not entitled to dismissal of this claim.

### 2. *Section 12(2)*

Binder next argues that plaintiffs fail to state a claim pursuant to Section 12(2) of the Securities Act of 1933, 15 U.S. C. § 77*l* ("Section 12(2)"). First, Binder argues that an action pursuant to Section 12(2) may be pursued against only plaintiffs' immediate seller of securities. The cases in this Circuit, however, including those upon which Binder relies, hold that a claim pursuant to Section 12(2) may be stated against parties other than plaintiffs' immediate seller. Thus, in *Katz v. David W. Katz & Co.*, 1984 Fed.Sec.L.Rep. (CCH) ¶ 99, 669 (S.D.N.Y.1984) [Available on WESTLAW, 1984 WL 2385], the Court recognized that a claim could be stated against a defendant other than plaintiff's immediate seller where there was some "meaningful participation" in the sale on the part of the named defendant.

Similarly, in *Klein v. Computer Devices, Inc.*, 602 F.Supp. 837 (S.D.N.Y.1985) the Court noted that a Section 12(2) plaintiff could state a claim against immediate sellers as well as "those who substantially participated in the transaction." *Id.* at 840. The cases cited by Binder stand, under the very broadest of readings, for the proposition that an underwriter cannot be liable under Section 12(2) where there is a firm commitment underwriting and the sale was made by a different underwriter. Even in such a case, however, it has been recognized that liability might be imposed if the underwriter participated in the sales transaction to a greater degree or if the defendant underwriter aided in the preparation of a false prospectus used in selling securities to purchasers. *Klein*, 602 F.Supp. at 840–41.

In sum, Binder is not entitled to dismissal of the claim pursuant to Section 12(2) simply because he was not plaintiff's immediate seller. Although further development of the facts might result in a finding that Binder's participation in the sale of

Musikahn shares was insufficient to impose liability pursuant to Section 12(2), such a finding cannot be made at this early stage of the proceeding.

 Binder next argues that plaintiffs' Section 12(2) claim must be dismissed because of the failure to allege tender of the securites at issue. Although a tender of securities still held is a prerequisite for the granting of the remedy of rescission under Section 12(2), *Randall v. Loftsgaarden*, —— U.S. ——, 106 S.Ct. 3143, 3149, 92 L.Ed.2d 525 (1986); tender is not required where plaintiff no longer owns the securities at issue. *See Randall*, 106 S.Ct. at 3147. Moreover, neither the statute nor the cases specify the time for tender and it has been held that a tender prior to or during trial satisfies the purpose for tender. *Gridley v. Cunningham*, 550 F.2d 551, 554 (8th Cir.1977). Thus, the Court holds that the failure to allege a tender of securities in the Second Amended Complaint does not require dismissal of plaintiffs' Section 12(2) claim.

## II. *BR's Motion to Dismiss The Initial and First Amended Complaint*

Like defendant Binder, BR has twice previously moved this Court to dismiss plaintiffs' complaints. The initial complaint was dismissed because plaintiffs alleged only that certain plaintiffs had purchased Musikahn stock from BR and that certain unnamed BR employees made false statements about the Musikahn offering. Like the initial complaint against Binder, the initial complaint against BR was insufficient because it failed to indentify the speakers, attribute any statements to BR and failed to set forth with particularity the statements upon which plaintiffs relied. *See Jubran I* at 3.

Although the First Amended Complaint named Tribet as the BR employee who acted fraudulently it too was dismissed because it failed to specify whether Tribet or Catapano made the particular representations and never stated where, how or to whom the representations were made. Moreover, the First Amended Complaint was dismissed because it failed to allege any facts upon which the "information and belief" that BR was a wrongdoer was grounded. *See Jubran* II at 6.

## *The Second Amended Complaint*

The Second Amended Complaint elaborates upon the allegations against B & R in much the same way that it elaborates on the allegations against Binder. Thus, BR is now on notice of the particular statement allegedly spoken by Tribet, its employee, to plaintiff Campo. BR is also now aware of the time and place of the alleged discussion. In addition, plaintiffs have stated the grounds for the information and belief that BR is involved in some type of wrongdoing. Thus, in addition to pleading the fact that Musikahn stock was sold in mid-1985 for $.30 by certain underwriters, in support of the allegation that defendants knew that their assertions as to value were false, plaintiffs have alleged the similarity of Catapano and Tribet's statements as the source of their belief of the existance of some type of an agreement among the defendants. Second Amended Complaint ¶ 39. Although BR has not specifically relied on Rule 9(b), the Court notes that the Second Amended Complaint puts BR on notice of the wrongful conduct with which it is charged with sufficient particularity to comply with Rule 9(b).

## *BR's Rule 12(b)(6) Motion*
### 1. *Section 10(b)*

In order to state a claim under Section 10(b) a plaintiff must allege that in connection with a purchase or sale of securities a defendant, acting with scienter, made a false material representation or omitted to disclose material information and that the plaintiff's reliance on defendant's action caused injury. *DuPont v. Brady*, 646 F.Supp. 1067, 1072 (S.D.N.Y.1986); *Savino v. E.F. Hutton & Co., Inc.*, 507 F.Supp. 1225, 1231 (S.D.N.Y.1981). According to BR, plaintiffs have failed to comply with any of these requirements. For the reasons set forth below, the Court disagrees.

First, BR argues that plaintiffs have not plead adequately the falsity of the statements or knowledge of such falsity by BR's employee. The Court finds, however, that the Second Amended Complaint pleads that Tribet, BR's employee, knew that the statements he spoke were false and, as noted above, sets forth the basis for plaintiffs' beliefs. Second Amended Complaint ¶¶ 34, 39. The Court therefore rejects the notion that plaintiffs have failed to plead adequately the falsity of the statements allegedly relied upon. The Court also rejects BR's contention that the statements referred to in the pleadings are merely "salesman's talk" that cannot, in any event, give rise to a cause of action. While such a characterization may be proper after trial and may preclude the imposition of liability, the Court cannot accept BR's characterization of the statements in the context of a motion to dismiss and therefore must reject the argument that the statements cannot, as a matter of law, form the basis for recovery.

Next, BR argues that plaintiffs have failed to plead the requisite scienter, reliance and causation. For the reasons set forth in disposing of Binder's scienter argument, the Court holds that plaintiffs have adequately pled scienter. The Court also holds that the Second Amended Complaint comports with the requirements for pleading reliance and causation. Plaintiffs have alleged that the statements were made for the purpose of and had the effect of inducing plaintiffs to purchase Musikahn stock. Although BR argues that such allegations might satisfy the requirement of "transaction causation", *i.e.,* that the misrepresentations caused the plaintiffs to engage in the transaction at issue, they argue that plaintiffs have not alleged the requisite "loss causation", *i.e.,* that the misrepresentations caused the economic harm suffered.

The concept of "loss causation" derives from the common law concept of proximate cause and " 'in effect requires that the damage complained of be one of the foreseeable consequences of the misrepresentation.' " *Manufacturers Hanover Trust v. Drysdale Securities Corp.,* 801 F.2d 13, 20–21 (2d Cir.1986) (citation omitted), *cert. denied,* —— U.S. ——, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987). Accordingly, at trial, the Court will take into account whether plaintiffs' losses are attributable to defendants' conduct or to some other factor including plaintiffs' own recklessness or negligence. *See id.* Such a finding, however, cannot be made at the pleading stage and will not form the basis, in this case, for the granting of a motion to dismiss.

The Court must also reject BR's argument that plaintiffs' claims do not arise in connection with the purchase or sale of a security. Plaintiffs have alleged the purchases made and that they were subject to deceptive conduct in connection with their purchase. No more is required to comply with pleading the "in connection with" requirement and the absence of a direct communication between many plaintiffs and Tribet does not, in and of itself, render the complaint inadequate. *See Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 745, 95 S.Ct. 1917, 1930, 44 L.Ed. 2d 539 (1975); *Baretge v. Barnett,* 553 F.2d 290, 291 (2d Cir.1977) (rejecting requirement the defendant be direct seller of stock to be liable). BR's argument that intervening conversations between Campo and other securities salespeople sever the transactional nexus between the conversations with Tribet and the purchase of a security is purely factual and must await further development at trial.

Finally, for the reasons set forth in disposing of Binder's motion to dismiss, the Court holds that plaintiffs have alleged adequately facts upon which aiding and abetting liability may be imposed.

### Section 12(2)

BR argues that plaintiffs must show that their shares were purchased pursuant to a misleading prospectus. Since Section 12(2) applies, on its face, to sales "by means of a prospectus or oral communication," 15 U.S.C. § 77*l* (2), BR's position is without merit. The remainder of BR's Section 12(2) argument mirrors that of

Binder. For the reasons stated here and above, the motion to dismiss the claim pursuant to Section 12(2) is denied.

### Pendent State Claims

The Court's finding that plaintiffs have complied with Rule 9(b) in pleading their federal securities claims leads the Court to find that plaintiffs have pled the pendent state claims with the requisite particularity. Since the Court declines to grant BR's motion to dismiss the federal securities claims it need not dismiss plaintiff's pendent state claims. *See United Mine Workers v. Gibb*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

### III. *Individual Securities' Motion to Dismiss*

Individual Securities' motion to dismiss is based upon the same arguments raised in BR's motion to dismiss. Indeed, with minor changes of immaterial factual information, Individual Securities' memorandum of law is identical to the memorandum submitted by BR. Since Individual Securities has not raised any arguments unique to it, the Court denies its motion to dismiss the Second Amended Complaint for the reasons set forth in disposing of BR's motion to dismiss.

### IV. *Catapano's Motion to Dismiss*

As noted above, Catapano previously moved this Court to dismiss the First Amended Complaint. In *Jubran II*, the Court granted that motion for failure to comply with the pleading requirements of Rule 9(b). Specifically, the Court held the First Amended Complaint to be deficient because it failed to specify whether the alleged misrepresentations were made by Catapano or Tribet and did not state where or how the statements relied upon were made. In addition, the First Amended Complaint failed to give any time for the making of the allegedly false representations beyond that they occurred at some point within the four month period of February through May 1985. Since the First Amended Complaint thus failed to properly apprise Catapano of the allegedly fraudulent conduct with which he was charged, the Court granted the motion to dismiss

but allowed plaintiffs twenty days from the entry of the Order of Dismissal in which to file a second amended complaint "containing more particularized allegations against Catapano." *Jubran II* at 6–7.

Catapano's second motion to dismiss is based upon a stated failure of the Second Amended Complaint to comply with the pleading requirements of Rule 9(b). Adopting essentially the same arguments as the other defendants, Catapano also moves to dismiss the Second Amended Complaint for failure to state a claim upon which relief may be granted.

### Catapano's Rule 9(b) Motion

■ As noted above, the Second Amended Complaint, unlike the First Amended Complaint, sets forth with particularity the precise statements made by Catapano, the party to whom the statements were communicated, the date of communication and the place where the conversations allegedly took place. Plaintiffs have thus cured their previous pleading defects by attributing each alleged misrepresentation to either Catapano or Tribet and by stating all relevant circumstances surrounding the conversations. The Court now finds that Catapano has been fully apprised of the allegedly fraudulent conduct with which he is charged and holds the Second Amended Complaint sufficient under Rule 9(b).

Catapano continues to take issue with plaintiffs' pleading because it allegedly fails to adequately plead scienter and because the statements attributed to him are no more than "puffing" or "sales talk." Both of these arguments are without merit. As noted above, scienter may be pled generally and plaintiffs have complied with that requirement. The Court cannot, in the context of a motion to dismiss, characterize the claimed misrepresentations as mere "puffing" but must await further factual development. Catapano's remaining argument that reliance and causation have not been adequately pled is equally without merit. As noted in the disposition of BR's motion to dismiss, these elements are pled adequately. In sum, the Court finds that

the Second Amended Complaint fully complies with Rule 9(b) in stating a claim against Catapano.

### Catapano's Rule 12(b)(6) Motion

Catapano's motion pursuant to Rule 12(b)(6) argues that plaintiffs failed to state a claim under Section 12(2). Catapano's argument mirrors that of Binder and is rejected for the reasons stated in disposing of Binder's motion to dismiss.

### Conclusion

For the reasons stated in this opinion, the motions of defendants Binder, BR, Individual Securities and Catapano are denied.

SO ORDERED.